**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**MARCUS BENNETT,**

**Petitioner,**

**v.** **Case No.: 5:23-cv-00477**

**WARDEN, FCI BECKLEY,**

**Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Marcus Bennett filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking the application of time credits earned under the First Step Act ("FSA"). (ECF No. 1). Pending before the Court is a motion to dismiss contained in the Warden's Response. (ECF No. 6). This case is assigned to the Honorable Frank W. Volk, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that Respondent's motion to dismiss, (ECF No. 6), be **GRANTED**, and Bennett's § 2241 petition, (ECF No. 1), be **DISMISSED** and **REMOVED** from the docket of this Court.

## I. Relevant History

Bennett is a federal prisoner currently incarcerated in Federal Correctional Institution Beckley, with a projected release date of June 3, 2029. *See* Federal Bureau of

Prisons ("BOP") Inmate Locator, https://www.bop.gov/inmateloc/. Bennett is serving a 168-month sentence for a drug trafficking conviction in the Western District of Kentucky. (ECF No. 6 at 1).[1] Bennett filed the instant § 2241 petition on June 30, 2023. (ECF No. 1 at 3). In his petition, Bennett states that FCI Beckley has erroneously calculated his recidivism risk level to be medium. He argues that his recidivism risk level should have dropped to low by now, because he has diligently completed classes and programs intended to reduce his recidivism risk level. (*Id.* at 2–3). Bennett requests the Court to order the BOP to change his recidivism risk level to low and apply his earned FSA time credits. (*Id.* at 3). Bennett attached to his petition a copy of his BOP Individualized Needs Plan. (ECF No. 1-1).

Respondent filed a Response on August 2, 2023, arguing that Bennett's petition should be dismissed as unripe. (ECF No. 6). Respondent explains that an inmate may only apply FSA time credits towards supervised release once he has earned credits equal to the remainder of his sentence, up to 365 days in advance of his projected release date. (*Id.* at 5–7). Because Bennett's release date is more than a year away, he could still lose any FSA time credits he has earned. In any event, as he is not yet eligible to apply them, he has not yet suffered an injury. (*Id.* at 6–7). Therefore, Bennett's claim is not ripe, and the Court lacks jurisdiction to consider it. (*Id.* at 8).

Bennett filed a Reply on September 29, 2023. (ECF No. 8 at 1). Bennett argues that his claim is ripe, and he states that even if he is not currently eligible to apply his time credits, his security classification presents an immediate injury, because it affects the number of time credits he can earn per month. (*Id.*). He also argues that the BOP should

[1] Respondent mistyped the number of Bennett's criminal case in the Western District of Kentucky; the correct case number is 3:17-cr-32.

be able to apply his FSA time credits immediately, "because the BOP already uses a system to pre-calculate an inmates [sic] sentence based on 'good time credit.'" (*Id.*).

## II. Standard of Review

Because Respondent filed a Response concurrently with the motion to dismiss, the motion technically is one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion to dismiss under Rule 12(c) applies the same standard of review as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12 (b)(6), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a Rule 12(c) motion in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, without converting the motion into one for summary judgment. *Id.* The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the [petition] and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572

F.3d 176, 180 (4th Cir. 2009).

## III. Discussion

The First Step Act created a system for federal inmates to earn time credits for completing various evidence-based recidivism reduction programming while incarcerated. 18 U.S.C. § 3632(d)(4)(A). Most inmates are eligible to earn FSA time credits throughout their term of incarceration, but those credits may only be applied to an inmate's sentence once certain criteria are met. *See* 18 U.S.C. §§ 3632(d)(4), 3624(g). One of the requirements is that a prisoner must have earned time credits equal to the remainder of the imposed term of imprisonment. 18 U.S.C. § 3624(g)(1)(A). The statute does not permit inmates to apply their earned time credits before the credits earned equal the remaining sentence, because FSA credits may be lost in the interim. *Cisneros v. Rosalez,* No. A-22-CV-1259-DII-ML, 2023 WL 6977933, at *2 (W.D. Tex. Aug. 2, 2023), *report and recommendation adopted,* No. 1:22-CV-1259-RP, 2023 WL 6979609 (W.D. Tex. Oct. 23, 2023). Further, an inmate may only apply 365 days' credit towards supervised release. *See* 18 U.S.C. § 3624(3) ("[T]he Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632").

Bennett has over five years remaining on his sentence. Consequently, even if Bennett has earned 365 days' credit, he is not eligible to have those credits applied, because they do not equal the remainder of his term of imprisonment. Therefore, Bennett does not meet the first requirement of 18 U.S.C. § 3632(g) and is not currently eligible to have his earned time credits applied to his sentence. *See Pujols v. Stover*, No. 3:23-CV-564 (SVN), 2023 WL 4551423, at *3 (D. Conn. July 14, 2023) (dismissing § 2241 petition for application of FSA time credits where petitioner's earned credits did not equal his

remaining sentence). Because Bennett's request to apply FSA time credits is premature, his claim is not ripe for adjudication, and the Court lacks jurisdiction to consider it. *See Patrick v. Heckard*, No. 5:23-CV-00234, 2024 WL 770631, at *4 (S.D.W. Va. Jan. 26, 2024), *report and recommendation adopted*, No. 5:23-CV-00234, 2024 WL 767179 (S.D.W. Va. Feb. 22, 2024) (dismissing as unripe petition requesting the application of FSA time credits where petitioner had several years remaining on his sentence and was thus presently ineligible to apply time credits).

Bennett argues that he should be able to apply his FSA time credits immediately, because the BOP already calculates the application of good conduct time. (ECF No. 8 at 1). But Bennett mistakes the calculation of time credits with the application of those time credits. An inmate's projected release date includes the calculation of his good conduct time. 28 C.F.R. § 523.20. But, like FSA time credits, good conduct time can be lost, and the projected release date may change. *Id.* § 523.20(a). Good conduct time is only applied when the inmate reaches his projected release date—when his good conduct time earned equals the time remaining on his sentence—and he is released from prison. *Id.* § 523.20 (b)(4); *see* 18 U.S.C. § 3624 (b)(2) ("[C]redit awarded under this subsection [...] shall vest on the date the prisoner is released from custody."). Just as Bennett would not be eligible to apply his good conduct time until he reaches his projected release date, he is not eligible to apply his FSA time credits and be released until the number of earned credits equals the amount of time remaining on his sentence.

Bennett also challenges his recidivism risk level, arguing that his risk level should be low instead of medium, and that his "erroneously" calculated recidivism risk score is affecting the number of FSA time credits he earns. (ECF Nos. 1 at 3, 8 at 1). Assuming that this challenge is ripe, Bennett has not shown that the BOP miscalculated his recidivism

risk level, nor would he be able to have such an error reviewed by a court. A prisoner's recidivism risk level is determined by their PATTERN score—the Prisoner Assessment Tool and Targeting Estimated Risk and Needs. *Steelman v. FCI Beckley Warden*, No. 5:23-CV-00599, 2024 WL 1781909, at *3 (S.D.W. Va. Apr. 5, 2024), *report and recommendation adopted*, No. 5:23-CV-00599, 2024 WL 1769948 (S.D.W. Va. Apr. 24, 2024). For males, PATTERN includes 15 factors: an inmate's current age; whether he has a Walsh conviction and/or committed a violent offense; his criminal history points; history of escapes and/or violence; education score, such as whether the inmate is enrolled in a GED program or has the equivalent of a high school diploma; completion of drug treatment programs; all incident reports in the past 120 months, whether any were serious, and time period since last incident report; whether the inmate agreed to participate in the financial responsibility program; and the number of eligible activities and work programs the inmate completed. Each factor is assigned a certain point value, which results in a general recidivism risk score and a violent recidivism risk score. (Id.) A prisoner's PATTERN scores place him in one of four recidivism risk categories: minimum, low, medium, or high. *Steelman*, 2024 WL 1781909, at *3. The recidivism risk level, in turn, determines whether the prisoner is eligible to apply his earned FSA time credits. *Id.*

Bennett does not point to any specific error in calculating his PATTERN score and recidivism risk level; rather, he argues that it is "incomprehensible" that his risk level has not decreased following his participation in evidence-based recidivism reduction ("EBRR") classes. (ECF No. 1 at 2). Bennett misunderstands the PATTERN risk assessment system. Participation in EBBR programs and productive activities does not guarantee a reduction in a prisoner's recidivism risk level. As stated above, an inmate's infraction history, work, and program completion are all included in the PATTERN score,

but they are only part of the risk assessment system. The PATTERN tool also considers many other variables, including the inmate's age, criminal history, and participation in drug treatment. Because the PATTERN score and recidivism risk level depend on the cumulative effect of fifteen variables, some weighted more heavily than others, improvement in one or some variables may not ultimately reduce a prisoner's recidivism risk level. Bennett's participation in programs have apparently not had a sufficient effect on his PATTERN score to reduce his recidivism risk level. Bennett has not demonstrated that his risk recidivism level was miscalculated, and so his petition based upon that claim should be dismissed. *See Brown v. Hudson*, No. 22-3063-JWL, 2022 WL 2438380, at *5 (D. Kan. July 5, 2022) (dismissing habeas petition where petitioner challenged recidivism risk level but could not show that the assessment was improper).

Even if Bennett could show that his recidivism risk level was miscalculated, 18 U.S.C. § 3625 seems to prohibit judicial review of a prisoner's PATTERN score or recidivism risk level. This statute excludes from judicial review "any determination, decision, or order" made under Chapter 229, subchapter C—§§ 3621–3626. This subchapter includes the implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h), and the BOP's eligibility determinations with respect to the application of FSA time credits. 18 U.S.C. § 3624(g)(1). Following § 3625, several courts, including this one, have found that PATTERN scores and recidivism risk levels are not subject to judicial review. *See Hicks v. Heckard*, No. 5:23-CV-00581, 2024 WL 833190, at *6 (S.D.W. Va. Feb. 1, 2024), *report and recommendation adopted*, No. 5:23-CV-00581, 2024 WL 818472 (S.D.W. Va. Feb. 27, 2024); *Nevel v. Brown*, No. 5:23-CV-285, 2023 WL 8505881, at *6 (N.D.W. Va. Oct. 27, 2023), *report and recommendation adopted*, No. 5:23-CV-285, 2023 WL 7490046 (N.D.W. Va. Nov. 13, 2023); *Newell v. Fikes*, No.

2:22-CV-53, 2023 WL 2543092, at *2 (S.D. Ga. Feb. 21, 2023), *report and recommendation adopted*, No. 2:22-CV-53, 2023 WL 2541126 (S.D. Ga., Mar. 16, 2023). Therefore, even if Bennett could identify an error in his PATTERN score and resulting recidivism risk level, he would not be able to challenge that error in court. Accordingly, the undersigned **FINDS** that Bennett's petition must be dismissed, as his request to apply FSA time credits is unripe, and his recidivism risk level is not subject to judicial review.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that Respondent's motion to dismiss, (ECF No. 6), be **GRANTED**, and Bennett's § 2241 petition, (ECF No. 1), be **DISMISSED** and **REMOVED** from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED**: June 18, 2024

Cheryl A. Eifert
United States Magistrate Judge